# NOTE

JUNE 27, 2019                    MT LAUREL                    NEW JERSEY
[Date]                                [City]                                [State]

1411 E CLIVEDEN STREET, PHILADELPHIA, PENNSYLVANIA 19150
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 313,875.00      (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, A LIMITED LIABILITY COMPANY (CFL # ██████ .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

(A)   Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   1st   day of each month beginning on      AUGUST 1 2019        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on      JULY 1, 2049      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at   700 EAST GATE DRIVE, MT LAUREL, NEW JERSEY 08054
or at a different place if required by the Note Holder.

(B)   Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,613.76

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

PENNSYLVANIA FHA FIXED RATE NOTE
PAFHANTE  03/02/18                    Page 1 of 4                    DocMagic *eForms*
                                                                      www.docmagic.com

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  4.000 % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

PENNSYLVANIA FHA FIXED RATE NOTE
PAFHA.NTE  03/02/18                    Page 2 of 4                    DocMagic eForms
                                                                     www.docmagic.com

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.  EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a)   any default described in Section 6(B) of this Note;

(b)   Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;

(c)   Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;

(d)   the Maturity Date as defined in this Note;

(e)   the entry of any judgment against me under this Note; and

(f)   the entry of any judgment under the Security Instrument.

PENNSYLVANIA FHA FIXED RATE NOTE
PAFHANTE  03/02/18                                    Page 3 of 4                                    DocMagic eForms
                                                                                                     www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Azaraha Robinson               -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower



Loan Originator: JESSE SCHWAGER, NMLSR I[          ]
Loan Originator Organization: AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE
COMPANY LLC, NMLSR I[          ]



*[Sign Original Only]*



PENNSYLVANIA FHA FIXED RATE NOTE
PAFHANTE  03/02/18                        Page 4 of 4                        DocMagic eForms
                                                                           www.docmagic.com

Recorded in Philadelphia PA   Doc Id: 53533332
07/03/2019 11:16 AM   Page 1 of 22   Rec Fee: $226.75
Receipt#
Records Department   Doc Code: M

This Instrument Prepared By:
AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC
700 EAST GATE DRIVE STE 400
MOUNT LAUREL, NJ 08054

~~After Recording Return To:~~
AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC
700 EAST GATE DRIVE
MT LAUREL, NEW JERSEY 08054

Uniform Parcel Identifier Number:

Property Address:
1411 E CLIVEDEN STREET
PHILADELPHIA, PENNSYLVANIA 19150

————————————————— [Space Above This Line For Recording Data] —————————————————

FHA Case No:

# MORTGAGE

**MERS Phone**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 10, 12, 17, 19, 20 and 27.  Certain rules regarding the usage of words used in this
document are also provided in Section 15.

**(A)**  **"Security Instrument"** means this document, which is dated   JUNE 27, 2019   ,
together with all Riders to this document.
**(B)**  **"Borrower"** is   AZARAHA ROBINSON, MARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.

RETURN TO:
WORLDWIDE RECORDING, INC.
9801 LEGLER RD
LENEXA, KS 66219

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. MERS telephone number is (888) 679-MERS.

**(D) "Lender"** is AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC

Lender is a    LIMITED LIABILITY COMPANY                                    organized
and existing under the laws of    DELAWARE
Lender's address is    700 EAST GATE DRIVE, MT LAUREL, NEW JERSEY 08054

**(E) "Note"** means the promissory note signed by Borrower and dated    JUNE 27 ,
2019    . The Note states that Borrower owes Lender    THREE HUNDRED THIRTEEN
THOUSAND EIGHT HUNDRED SEVENTY-FIVE AND 00/100    Dollars
(U.S. $    313,875.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JULY 1, 2049 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] Rehabilitation Loan Rider |

Provisions pertaining to releases are contained in the Rehabilitation Loan
Rider which is attached to this mortgage, and made a part hereof.

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-

of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)    "Escrow Items"** means those items that are described in Section 3.

**(M)    "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu  of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)    "Mortgage Insurance"** means insurance protecting Lender against the  nonpayment of, or default on, the Loan.

**(O)    "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)    "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)    "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R)    "Successor in Interest of Borrower"** means  any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|  |  |  |  |
|---|---|---|---|
| COUNTY | of | PHILADELPHIA | : |
| [Type of Recording Jurisdiction] |  | [Name of Recording Jurisdiction] |  |

SEE ATTACHED LEGAL DESCRIPTION
A.P.N.: ▓▓▓▓▓▓▓▓▓

which currently has the address of          1411 E CLIVEDEN STREET
                                                        [Street]

          PHILADELPHIA          , Pennsylvania          19150          ("Property Address"):
          [City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms,

as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower

shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and  Community Association Dues, Fees, and Assessments, if any. To the extent  that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5.  Property Insurance.** Borrower shall keep the improvements now  existing or hereafter erected on the Property insured against loss by fire, hazards  included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time  charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows,

drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made  by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually  received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure

on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which,

due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 10 of this Security Instrument;

(h) permit the collection and application of miscellaneous proceeds as required by Section 11 of this Security Instrument;

(i) pay the fees required by Section 14 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note. "Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 18 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e)   the entry of any judgment against Borrower under the Note; and
(f)   the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Azaraha Robinson                    -Borrower

_____        _____
Witness                                  Witness

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of ___PENNSYLVANIA_____

County of ___PHILADELPHIA_____

On this the _27_ day of _June 2019_____, before me, _____

_Stephanie Powell_____,

the undersigned officer, personally appeared ___Azaraha Robinson_____.

_____

_____,

known to me (or satisfactorily proven) to be the person whose name ___is_____

_____

subscribed to the within instrument and acknowledged that ___she_____

_____

executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
STEPHANIE L .POWELL
Notary Public
CITY OF PHILADELPHIA, PHILADELPHIA CNTY
My Commission Expires Aug 17, 2019

_Stephanie Powell_____

_Notary Public_____
Title of Officer

**(Seal)**

Loan Originator: JESSE SCHWAGER, NMLSR ID ▮▮▮▮▮ Loan Originator
Organization: AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY LLC, NMLSR ID ▮▮▮▮▮

**Certificate of Residence of Mortgagee**

The undersigned hereby certifies that: (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is: 1901 E Voorhees Street, Suite C, Danville, IL 61834

Witness my hand this _____ day of _____.

_____
Signature of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

_____
Type or Print Name of Mortgagee or
Mortgagee's Duly Authorized Attorney or Agent

# REHABILITATION LOAN RIDER

| FHA Case No. ███████ |
| --- |

THIS REHABILITATION LOAN RIDER is made this   27th  day of  JUNE, 2019                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note ("Note") to  AMERICAN NEIGHBORHOOD MORTGAGE ACCEPTANCE COMPANY
LLC, A LIMITED LIABILITY COMPANY (CFL # 803846)
("Lender") of the same date and covering the property described in the Security Instrument and located at:

1411 E CLIVEDEN STREET, PHILADELPHIA, PENNSYLVANIA 19150
[Property Address]

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.    Loan proceeds are to be advanced for the premises in accordance with the Rehabilitation Loan
Agreement dated          JUNE 27, 2019          , between Borrower and Lender. This
agreement is incorporated by reference and made a part of this Security Instrument. No advances shall
be made unless approved by the Secretary of Housing and Urban Development or a Direct
Endorsement Underwriter.

B.    If the rehabilitation is not properly completed, performed with reasonable diligence, or is discontinued
at any time except for strikes or lockouts, the Lender is vested with full authority to take the necessary
steps to protect the rehabilitation improvements and property from harm, continue existing contracts
or enter into necessary contracts to complete the rehabilitation.  All sums expended for such
protection, exclusive of the advances of the principal indebtedness, shall be added to the principal
indebtedness, and secured by the Security Instrument and be due and payable on demand with interest
as set out in the Note.

C.    If Borrower fails to perform any obligation under the loan, including the commencement, progress
and completion provisions of the Rehabilitation Loan Agreement, and such failure continues for a
period of 30 days, the loan shall, at the option of Lender, be in default.

D.    The Property covered by this Security Instrument shall include all of Borrower's interest in funds held
by Lender in escrow under the Rehabilitation Loan Agreement.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rehabilitation Loan Rider.

_____ (Seal)
Azaraha Robinson          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

[ADD ANY NECESSARY ACKNOWLEDGMENT PROVISIONS]

REHABILITATION LOAN RIDER
RLR.FHA  09/01/14                    Page 2 of 2

## Legal Description
### (Exhibit A)

The following real estate, situated in Philadelphia County, Pennsylvania, to-wit:

All that certain lot of piece of ground together with the building and improvements thereon erected situate in the 10th (formerly the 50th) Ward of the City of Philadelphia and described according to a Survey and Plan thereof made by Joseph F. Delany, Esquire, Surveyor and Regulator of the 5th District on the 17th day of October A.D., 1940, as follows to wit;

Beginning at the point of intersection of the Northwesterly side of Cliveden Street (sixty-six feet wide) and he Southwesterly side of Mansfield Avenue (eight feet wide); thence extending along the Southwesterly side of Mansfield Avenue North sixty-three (63) degrees forty-two minutes nineteen (19) seconds West seventy-two (72) feet seven and one-half (7-1/2) inches to a point of-curve; thence still extending along the Southwesterly side of Mansfield Avenue Northwesterly on a line curving to the right having a radius of one thousand one hundred sixty-eight (1,168) feet eight and one-fourth 8-1/4) inches the arc distance of twenty-four (24) feet five and three-fourths (5-3/4) inches to a point; thence extending South thirty-eight (38) degrees twenty-three (23) minutes twenty (20) seconds West fifty-five (55) feet one-half (1/2) inch to a point; thence extending South fifty-one (51) degrees thirty-six (36) minutes forty (40) seconds East ninety-five (95) feet to the Northwesterly side of Cliveden Street North thirty-eight (38) degrees twenty-three (23) minutes twenty (20) seconds seventy-five (75) feet one and three fourths (1-3/4) inches to the first mentioned point and place of beginnings being known and numbered as No. 1411 East Cliveden Street.

Subject to all easements, reservations, covenants, conditions, agreements of record if any.

Being the same property conveyed to Bayview Loan Servicing, LLC, a Delaware Limited Liability Company by Sheriff's Deed from Jewell Williams, Sheriff of the County of Philadelphia, in Commonwealth of Pennsylvania as recorded 9/4/2018 as Document 53412220.

Commonly Known As: 1411 Cliveden Street, Philadelphia, PA 19150

Tax ID ██████████

Receipt#: ▮▮▮▮▮▮
**Records Department   Doc Code: A**

WHEN RECORDED MAIL TO:
Brock & Scott, PLLC
1020 Spring Street
Wilkesboro, NC 28697

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

---

## ASSIGNMENT OF MORTGAGE

▮▮▮▮▮▮▮▮▮

MERS Address: 11819 Miami St., Suite 100, Omaha, NE 68164, P.O. Box 2026, Flint, MI 48501-2026
MERS Phone No: ▮▮▮▮▮▮▮▮▮

For good and valuable consideration, the sufficiency of which is hereby acknowledged, Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for American Neighborhood Mortgage Acceptance Company LLC, ITS SUCCESSORS AND ASSIGNS, Assignor, by these presents does convey, assign, transfer and set over to: American Neighborhood Mortgage Acceptance Company, LLC, whose address is 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047, Assignee, the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for $313,875.00 is recorded in the Commonwealth of PENNSYLVANIA, County of Philadelphia Recorder of Deeds, dated June 27, 2019 and recorded on July 3, 2019, as Doc Id: 53533432.

Original Mortgagor(s): Azaraha Robinson, Married Woman
Original Mortgagee: Mortgage Electronic Registration Systems, Inc., as Mortgagee, as nominee for American Neighborhood Mortgage Acceptance Company LLC, ITS SUCCESSORS AND ASSIGNS
Property Address: 1411 E Cliveden Street, Philadelphia, Pennsylvania 19150

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is at 11819 Miami St., Suite 100, Omaha, NE 68164, P.O. Box 2026, Flint, MI 48501-2026

▮▮▮▮▮▮▮▮▮▮

Assignment of Mortgage                                        page 1 of 2

Date: March 31, 2025

Mortgage Electronic Registration Systems. Inc., as Mortgagee, as nominee for American
Neighborhood Mortgage Acceptance Company LLC, ITS SUCCESSORS AND ASSIGNS

By: _____

_____
Name       **Jodi Reisch**

_____
Title       **Vice President**

STATE OF ___**Illinois**___
COUNTY OF ___**Lake**___ s.s.

On __March 31, 2025__ before me, ____**Renee M Kropp**____, a Notary Public,
personally appeared ____**Jodi Reisch**____, as ___**Vice President**___
_____ (title) of Mortgage Electronic Registration Systems. Inc., as Mortgagee. as
nominee for American Neighborhood Mortgage Acceptance Company LLC, ITS SUCCESSORS
AND ASSIGNS personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

_____, Notary Public
Name
Commission # _____
Commission expires: ___June 16, 2027___

RENEE M KROPP
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
June 16, 2027

CERTIFICATE OF ASSIGNEE ADDRESS
The undersigned does herby certify that the precise address of the Assignee is:
**1 Corporate Drive, Suite 360, Lake Zurich, IL 60047**

_____
**signature**
Jodi Reisch, Vice President

Legal Description:

**Legal Description
(Exhibit A)**

The following real estate, situated in Philadelphia County, Pennsylvania, to-wit:

All that certain lot of piece of ground together with the building and improvements thereon erected situate in the 10th (formerly the 50th) Ward of the City of Philadelphia and described according to a Survey and Plan thereof made by Joseph F. Delany, Esquire, Surveyor and Regulator of the 5th District on the 17th day of October A.D., 1940, as follows to wit:

Beginning at the point of intersection of the Northwesterly side of Cliveden Street (sixty-six feet wide) and he Southwesterly side of Mansfield Avenue (eight feet wide); thence extending along the Southwesterly side of Mansfield Avenue North sixty-three (63) degrees forty-two minutes nineteen (19) seconds West seventy-two (72) feet seven and one-half (7-1/2) inches to a point of curve; thence still extending along the Southwesterly side of Mansfield Avenue Northwesterly on a line curving to the right having a radius of one thousand one hundred sixty-eight (1,168) feet eight and one-fourth 8-1/4) inches the arc distance of twenty-four (24) feet five and three-fourths (5-3/4) inches to a point; thence extending South thirty-eight (38) degrees twenty-three (23) minutes twenty (20) seconds West fifty-five (55) feet one-half (1/2) inch to a point; thence extending South fifty-one (51) degrees thirty-six (36) minutes forty (40) seconds East ninety-five (95) feet to the Northwesterly side of Cliveden Street North thirty-eight (38) degrees twenty-three (23) minutes twenty (20) seconds seventy-five (75) feet one and three fourths (1-3/4) inches to the first mentioned point and place of beginnings being known and numbered as No. 1411 East Cliveden Street.

Subject to all easements, reservations, covenants, conditions, agreements of record if any.

Being the same property conveyed to Bayview Loan Servicing, LLC, a Delaware Limited Liability Company by Sheriff's Deed from Jewell Williams, Sheriff of the County of Philadelphia, in Commonwealth of Pennsylvania as recorded 9/4/2018 as Document 53412220.

Commonly Known As: 1411 Cliveden Street, Philadelphia, PA 19150

Tax ID:

eRecorded in Philadelphia PA   Doc Id: 54328347
08/07/2024 08:28 AM    Page 1 of 8    Rec Fee: $259.75
Receipt# ███████
Records Department    Doc Code: DM

Tax Parcel Identification Number: ███████

Prepared by:
AsurityDocs
717 N. Harwood, Suite 1600
Dallas, TX 75201
214-220-6300

Recording Requested By and Return
To:
MORTGAGE SERVICING
717 N HARWOOD ST STE 1600
DALLAS, TX 75201

_____ [Space Above This Line For Recording Data] _____
Original Recorded Date: July 3, 2019

# FHA COVID-19 RECOVERY LOAN MODIFICATION AGREEMENT

Made this **30th day of May, 2024**

Borrower ("I")[1]:  **AZARAHA ROBINSON, MARRIED WOMAN**, whose address is 1411 E CLIVEDEN ST, PHILADELPHIA, PA 19150

Lender ("Lender"):  **American Neighborhood Mortgage Acceptance Company, LLC**, whose address is **1 CORPORATE DR SUITE 360, LAKE ZURICH, IL 60047**

Date of First Lien Security Instrument ("Mortgage") and Note ("Note"):  **June 27, 2019**

1 If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

FHA COVID-19 RECOVERY LOAN MODIFICATION AGREEMENT                             9/21
PAMDFRECVM                                                              *Page 1 of 7*
Asurily.com

Property Address: **1411 E CLIVEDEN ST, PHILADELPHIA, PA 19150** ("Property")

**"MERS"** is Mortgage Electronic Registration Systems, Inc. ("Mortgagee"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 11819 Miami Street, Suite 100, Omaha, NE 68164 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

**SEE ATTACHED EXHIBIT "A"**

Tax Parcel Identification Number ▮▮▮▮▮▮▮

Recorded in INSTRUMENT NO. 53533432 of the Official Records of the County Recorder's or Clerk's Office of the County of PHILADELPHIA, Pennsylvania.

If my representations in Section 1 continue to be true in all material respects, then this FHA COVID-19 Recovery Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the First Lien Mortgage on the Property, and (2) the Note secured by the First Lien Mortgage. The First Lien Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. The Property has not been condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not

54328347    Page 3 of 8    08/07/2024 08:28 AM



be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **July 1, 2024** (the "Modification Effective Date") and all unpaid late charges that accumulated on or after March 1, 2020 and remain unpaid are waived. The Loan Documents will be modified and the first modified payment will be due on **August 1, 2024.**

    A.  The new Maturity Date will be: **July 1, 2064.**

    B.  The modified Principal balance of my Loan will include all amounts and arrearages that will be past due (excluding unpaid late charges that accumulated on or after March 1, 2020) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Loan will be $215,949.36 (the "New Principal Balance").

    C.  Interest at the rate of **7.500%** will begin to accrue on the New Principal Balance as of **July 1, 2024** and the first new monthly payment on the New Principal Balance will be due on **August 1, 2024.** My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 40 | 7.500% | 07/01/2024 | $1,421.10 | $583.83 may adjust periodically | $2,004.93 may adjust periodically | 08/01/2024 | 480 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

    D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

    E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I agree to the following:

    A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

54328347   Page 4 of 8   08/07/2024 08:28 AM





B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That I have been advised of the amount needed to fully fund my Escrow Account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.  The Loan Documents constitute a first lien on the Property and are in no way prejudiced by this Agreement.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

H. That MERS holds only legal title to the interests granted by the Borrower in the mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

54328347    Page 5 of 8    08/07/2024 08:28 AM

In Witness Whereof, the Lender, Mortgagee and I have executed this Agreement.

_____ (Seal)
AZARAHA ROBINSON                    -Borrower

Commonwealth of Pennsylvania            §

County of PHILADELPHIA                  §

This record was acknowledged before me on _____ June 17ᵗʰ 2024 by AZARAHA
ROBINSON.

[Seal]

_____
Salim Wils
                                    Notary Public

_____
Salim Wilson
                                    (Printed Name)

My commission expires: August 2, 2025

Title of Office: _____

Commonwealth of Pennsylvania - Notary Seal
SALIM WILSON, Notary Public
Philadelphia County
My Commission Expires August 2, 2025
Commission Numb

54328347    Page 6 of 8    08/07/2024 08:28 AM

American Neighborhood Mortgage
Acceptance Company, LLC
Lender

By: _____ (Seal)
    Agnes Piwowar

Title: **Vice President**

_August 1st, 2024_
Date of Lender's Signature

State of _Illinois_                §

County of _Lake_                 §    AUG 0 1 2024

This record was acknowledged before me on _____ by
_____Agnes Piwowar_____ as ____**Vice President**____ who represent that he/she/they
is/are authorized to act on behalf of **American Neighborhood Mortgage Acceptance Company, LLC.**

[Seal]

_Rebecca L Ellington_
                                    Notary Public

Rebecca L Ellington
                                    (Printed Name)

REBECCA L ELLINGTON
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
November 28, 2026

My commission expires: _11/28/2026_

Title of Office: _Notary Public_

FHA COVID-19 RECOVERY LOAN MODIFICATION AGREEMENT                9/21
PAMDFRECVM                                                      Page 6 of 7
Asurity.com

54328347    Page 7 of 8    08/07/2024 08:28 AM

Mortgage Electronic Registration Systems, Inc.,
as Mortgagee, as nominee for American
Neighborhood Mortgage Acceptance
Company, LLC, its successors and assigns
Mortgagee

_____ (Seal)

By:    **Thomas Queen**

Title:    **Assistant Secretary**

_8/1/2024_____
Date of Mortgagee's Signature

State of _Illinois_____    §

County of _Lake_____    §

This record was acknowledged before me on ___AUG 0 1 2024___ by
___Thomas Queen___ as ___Assistant Secretary___ who represent that he/she/they
is/are authorized to act on behalf of Mortgage Electronic Registration Systems, Inc.

[Seal]

_Rebecca L Ellington_____
                    Notary Public

REBECCA L ELLINGTON
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
November 28, 2026

Rebecca L Ellington
(Printed Name)
(Notary Public)

My commission expires: _11/28/2026_

Title of Office: _Notary Public_

I certify that the precise residence and address of the within-named Lender is:  American
Neighborhood Mortgage Acceptance Company, LLC, 1 CORPORATE DR SUITE 360, LAKE
ZURICH, IL 60047.

_____
                Signature (Agent on behalf of Lender)
                    **Agnes Piwowar**
                    **Vice President**

FHA COVID-19 RECOVERY LOAN MODIFICATION AGREEMENT    9/21
PAMDFRECVM    Page 7 of 7
Asurity.com

54328347   Page 8 of 8   08/07/2024 08:28 AM





# LEGAL DESCRIPTION

See Attached Exhibit A

THE FOLLOWING REAL ESTATE, SITUATED IN PHILADELPHIA COUNTY, PENNSYLVANIA, TO-WIT:

ALL THAT CERTAIN LOT OF PIECE OF GROUND TOGETHER WITH THE BUILDING AND IMPROVEMENTS THEREON ERECTED SITUATE IN THE 10TH (FORMERLY THE 50TH) WARD OF THE CITY OF PHILADELPHIA AND DESCRIBED ACCORDING TO A SURVEY AND PLAN THEREOF MADE BY JOSEPH F. DELANY, ESQUIRE, SURVEYOR AND REGULATOR OF THE 5TH DISTRICT ON THE 17TH DAY OF OCTOBER A.D., 1940, AS FOLLOWS TO WIT;

BEGINNING AT THE POINT OF INTERSECTION OF THE NORTHWESTERLY SIDE OF CLIVEDEN STREET (SIXTY-SIX FEET WIDE) AND HE SOUTHWESTERLY SIDE OF MANSFIELD AVENUE (EIGHT FEET WIDE); THENCE EXTENDING ALONG THE SOUTHWESTERLY SIDE OF MANSFIELD AVENUE NORTH SIXTY-THREE (63) DEGREES FORTY-TWO MINUTES NINETEEN (19) SECONDS WEST SEVENTY-TWO (72) FEET SEVEN AND ONE-HALF (7-1/2) INCHES TO A POINT OF CURVE; THENCE STILL EXTENDING ALONG THE SOUTHWESTERLY SIDE OF MANSFIELD AVENUE NORTHWESTERLY ON A LINE CURVING TO THE RIGHT HAVING A RADIUS OF ONE THOUSAND ONE HUNDRED SIXTY-EIGHT (1,168) FEET EIGHT AND ONE-FOURTH 8- 1/4) INCHES THE ARC DISTANCE OF TWENTY-FOUR (24) FEET FIVE AND THREE-FOURTHS (5-3/4) INCHES TO A POINT; THENCE EXTENDING SOUTH THIRTY-EIGHT (38) DEGREES TWENTY-THREE (23) MINUTES TWENTY (20) SECONDS WEST FIFTY-FIVE (55) FEET ONE-HALF (1/2) INCH TO A POINT; THENCE EXTENDING SOUTH FIFTY-ONE (51) DEGREES THIRTY-SIX (36) MINUTES FORTY (40) SECONDS EAST NINETY-FIVE (95) FEET TO THE NORTHWESTERLY SIDE OF CLIVEDEN STREET NORTH THIRTY-EIGHT (38) DEGREES TWENTY-THREE (23) MINUTES TWENTY (20) SECONDS SEVENTY-FIVE (75) FEET ONE AND THREE FOURTHS (1-3/4) INCHES TO THE FIRST MENTIONED POINT AND PLACE OF BEGINNINGS BEING KNOWN AND NUMBERED AS NO. 1411 EAST CLIVEDEN STREET.

SUBJECT TO ALL EASEMENTS, RESERVATIONS, COVENANTS, CONDITIONS, AGREEMENTS OF RECORD IF ANY.

BEING THE SAME PROPERTY CONVEYED TO BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY BY SHERIFFS DEED FROM JEWELL WILLIAMS, SHERIFF OF THE COUNTY OF PHILADELPHIA, IN COMMONWEALTH OF PENNSYLVANIA AS RECORDED 9/4/2018 AS DOCUMENT 53412220.

COMMONLY KNOWN AS: 1411 CLIVEDEN STREET, PHILADELPHIA, PA 19150

AALEGALREC
Asurity.com